[Crim. No. 10852. Second Dist., Div. Four. Mar. 2, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. RAYMOND JERRY LEWIS, Defendant and Appellant.

Stiles Wegener, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J. — On December 23, 1964, defendant was charged with one count of burglary, a violation of section 459 of the Penal Code. The information was amended before trial to allege six prior convictions. Defendant pled "Not Guilty" and admitted the second, third, fourth, fifth and sixth priors. On motion of the district attorney, the first prior was stricken in the interest of justice. Jury trial was duly waived. Defendant was found guilty of burglary in the second degree. Probation was denied and defendant was sentenced to state prison, from which judgment he appeals.

### Sufficiency of the Evidence

Horace C. Owens, who lived almost directly across from the Friendly Cleaners, was watching television at home when he heard breaking glass and a burglar alarm. He looked across the street and saw a person come out of the Friendly Cleaners, reenter a few moments later, and come out again carrying clothes. Mr. Owens' son called the police. When Officer Bryant arrived Mr. Owens went to the street and met him. While they

were talking, Mr. Owens saw defendant walking along 131st Street, some 50 to 100 feet away. Mr. Owens said " 'That's him. I can tell the way he is walking.' " The officer then stopped the defendant. The officer's description of what then occurred is as follows: "I asked him where he was going, and he told me 2747 East El Segundo, which was only several blocks from there. I asked him where he had been, and he said he had been at a relative—I believe it was a sister—at 527 West Caldwell.

"I asked him why he was walking on 131st Street, and he stated that he had left his sister's house and walked over to Central Avenue and then north on Central Avenue to 131st and then had come across 131st.

"At that point I told him he was under arrest for suspicion of burglary." Officer Bryant searched the defendant's pockets and found a group of loose pennies, a roll of pennies, a silver dollar, and a distinctive button that was later found to match the buttons which were in the cash register of the Friendly Cleaners. Following the search, the officer took the defendant back to the scene in order that Mr. Owens might confirm his identification. Defendant was then taken to the police station and booked.

■ At the trial Mr. Owens testified that the defendant was the man whom he had seen enter the cleaning establishment, though his testimony was not as positive as the statement he had made to Officer Bryant at the time of the arrest. The witness added "Well, to be honest I could not say by features because I couldn't see the features from where I was." He then explained that he could identify the defendant by his build, walk and mannerisms. This testimony is sufficient to support the finding of the trial court.

■ The strength or weight of identification testimony is for the jury, or for the trial court in a nonjury trial. (*People* v. *Knight* (1941) 44 Cal.App.2d 887, 891 [113 P.2d 226].) In *People* v. *Van De Wouwer* (1949) 91 Cal.App.2d 633, 639 [205 P.2d 293], the court said: "The identity of a defendant may be established by proof of any peculiarities of size, appearance, similarity of voice, features or clothing." (See also *People* v. *Lindsay* (1964) 227 Cal.App.2d 482 [38 Cal. Rptr. 755].) ■ Lack of positiveness in identification does not destroy the value of the identification but goes only to its weight. (*People* v. *Ash* (1948) 88 Cal.App.2d 819, 825 [199 P.2d 711].)

## Legality of the Arrest

 Since the distinctive button and the roll of pennies taken from defendant's pockets added to the weight of the evidence against him it is necessary to consider the admissibility of that evidence. It was and is the contention of defendant that Officer Bryant had no legal grounds to make an arrest. Without a lawful arrest the search could not be justified and the evidence so acquired would be inadmissible.

An officer may make an arrest without a warrant when he has reasonable cause to believe that the person to be arrested has committed a felony. (Pen. Code, § 836, subd. 3.)

 Legal cause to arrest exists when there is ". . . such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." (*People* v. *Ingle*, 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].)

 Officer Bryant knew from his own observation that someone had just broken into the cleaning establishment, setting off the burglar alarm. He knew someone had telephoned the police to report a burglary in progress. A citizen emerging from the house across the street had given him an eyewitness description of the crime, as seen from the window of the house, and this purported eyewitness had positively identified a man on the street nearby as the burglar. When Officer Bryant questioned the accused, he received answers which were nonincriminating, but which were not persuasive of innocence. The suspect might well have been walking home from his sister's house, as he had asserted, and committed the burglary seen by Mr. Owens. The officer had no reliable way of determining this matter as he stood on the street corner. His immediate alternatives were to make an arrest or to allow the accused man to go his way, perhaps never to be found again. If the law allowed Officer Bryant to place any credence whatever in Mr. Owens' statements, it was his duty to make the arrest.

In bookmaking and narcotics cases the courts have developed the concept of the "reliable informant," which, in that context means a person who has previously given the police information which has been found to be true. By that standard a known criminal, a drug addict, or even an anonymous voice on the telephone may become a "reliable informant," upon whose word the police may make warrantless arrests,

break in doors and conduct searches. (See, e.g., *People* v. *Prewitt,* 52 Cal.2d 330 [341 P.2d 1].)

██ But experienced stool pigeons are not the only sources of credible information, and the tests of reliability which must be applied to such persons are not necessarily applicable to every citizen who assists the police.

Bookmaking and narcotics offenses are crimes which are usually committed in the presence only of the criminals themselves, where there is no innocent victim to complain. The persons most likely to furnish information are themselves criminally involved or disposed, and their reports to the police are generally motivated by something other than good citizenship. Such an informer rarely offers himself as a witness to crimes already committed. His usual function is to supply a tip in confidence whereby the police may witness a crime or uncover evidence of it for themselves. ██ A citizen such as Mr. Owens, who reports a crime committed in his presence, is more than a mere informer. He is an observer of criminal activity who, by calling the police, acts openly in aid of law enforcement.

Courts have not hesitated to find it reasonable for police officers to act upon the reports of such observers.

In *People* v. *Kilvington,* 104 Cal. 86 [37 P. 799, 43 Am.St. Rep. 73], a police officer was convicted of manslaughter for having shot and killed a fleeing man. The judgment was reversed because the trial court had failed to instruct the jury that the defendant had reasonable cause to arrest the deceased. The facts were that the officer, off duty, observed one man chasing another and crying out ''stop thief.'' The officer did not recognize either man. The Supreme Court said at pages 92-93 : ''It was night; the deceased was fleeing, pursued by a person who was shouting 'stop thief!' This was in effect a charge that the deceased had committed a theft of some kind, and the defendant had just as much reason to suspect or believe that the deceased may have committed robbery, or burglary, or grand larceny, as to suppose that his pursuer only meant by the cry of 'stop thief!' to charge him with petit larceny. The defendant was called upon to act promptly, and, as the language used by the witness Howard was broad enough in its popular sense to import a charge of felony, the defendant was justified in attempting to arrest the deceased. An officer who would refuse to arrest a person fleeing and pursued under the circumstances disclosed in this case, because the charge was not more direct and specific as to the commis-

sion of a felony, would be justly censurable for a neglect of official duty.''

In *People* v. *Williams,* 169 Cal.App.2d 400 [337 P.2d 134], a clerk in a department store saw the defendant shoplifting and called the police. The arrest, made solely upon this report, was held to be lawful. A search made as an incident to the arrest disclosed stolen merchandise under the defendant's clothing.

In *People* v. *Vaughn,* 155 Cal.App.2d 596, 598-599 [318 P.2d 148], the manager of a motel informed police he was looking out of a window when he saw one man take a gun forcibly from another. He described the men and their car. On this information the police found and arrested the men, and in a search, incident to the arrest, found evidence of a robbery, for which the men were prosecuted. The manager's report was held to have justified the arrest.

In *People* v. *Wright,* 216 Cal.App.2d 866 [31 Cal.Rptr. 432], a liquor store proprietor and a customer in the store were kidnaped and robbed. The customer gave the police a description of the robbers. The arrest, based upon this report, was held to have been lawful.

In *Cole* v. *Johnson,* 197 Cal.App.2d 788 [17 Cal.Rptr. 664], a bartender reported to police that he had been robbed, and described the robber. An arrest, based entirely upon the bartender's identification, was held valid as a matter of law in an action for damages brought by the arrestee against the policeman.

In none of the foregoing cases was there any suggestion by the court that the police should not have acted until they had first investigated the background, character or mental capacity of the person who reported the crime and described the criminal. ▆▆▆ We do not think that in the case at bench the law required Officer Bryant to disbelieve Mr. Owens' report and allow defendant to disappear into the night. The facts supported an honest and strong suspicion that defendant was the burglar.

### The Dorado Point

▆▆ Defendant claimed, during his trial, that he was not advised of his constitutional rights to remain silent and to be advised by counsel, as required by *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. During the initial conversation with the officer no warning was required,

since the proceedings then were purely investigatory. The record does not reflect any interrogation leading to any incriminating statement after the arrest and initial search. The point is without merit.

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.