[Crim. No. 15161. Second Dist., Div. Three. July 23, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. ISADOR
CHAVEZ, Defendant and Appellant.

Richard S. Buckley, Public Defender, Stuart R. Rappaport, John J. Gibbons and James L. McCormick, Deputy Public Defenders for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

COBEY, Acting P. J.—This is an appeal from a judgment of conviction of possession of marijuana. The sole issue is whether the police had probable cause to make a warrantless arrest of appellant solely on the basis of the information supplied them by an unknown and untested citizen informer. There was no corroboration, prior to their search of his person incident to his arrest, of his having committed the felony, possession of marijuana, for which he was arrested. Appellant

contends that the search of his person which produced the marijuana was unconstitutional because his arrest had been made without probable cause.

## The Facts

About 9 :15 on the evening of December 18, 1967, Joe Flores came up to two uniformed policemen parked in a patrol car and informed them that he had just seen a man attempting to sell marijuana to one of Flores' friends; that the man was a male Mexican of a specified height and weight; that he was black haired, had a small mustache and was wearing a beige jacket. Flores also told the police that the man had a straight razor in his right pocket and that Flores had seen him hide the marijuana in his left sock.

Flores explained to the police that he had seen marijuana before and that he knew what it was. One of the officers asked Flores where he lived and upon Flores' reply noted that his residence was across the street from the Naline Test Center, where there was a lot of narcotics traffic. The officer asked Flores if he was aware of this and Flores said that he was. The officer then talked to Flores about marijuana and he seemed to have ''quite a bit of knowledge'' about it. Finally the officers asked Flores if he were willing to be a witness in court and Flores said he was.

At this point the officers asked Flores where the man was. Flores replied that he was at a specified nearby tavern and that he would take the officers there. The three of them then went to the tavern and Flores pointed out appellant who was in a phone booth engaged in a telephone conversation. Appellant answered Flores' description of him to the police exactly. The officers asked appellant to come out of the phone booth, patted him down, and found a straight razor in his right side pocket and discovered that the lump in his left sock did contain a substance that was afterwards proven to be marijuana.

## The Positions of the Parties

Appellant contends that the two police officers were not justified in relying upon Flores' face-to-face report to them that he had just seen appellant attempt to sell marijuana to a friend of Flores' and that he had also seen appellant hide some marijuana in his left sock because Flores was unknown to the police, apparently had never furnished the police with information respecting criminal activity previously, and his information to them regarding his observance of criminal

activity by appellant was not corroborated in any respect prior to the police search of appellant's person upon his arrest.

The Attorney General replies that the police are entitled to rely, without corroboration or other test of reliability, upon the report of a citizen who, without having been a victim of the crime, has observed it being committed in his presence (*People* v. *Lewis,* 240 Cal.App.2d 546, 549-551 [49 Cal.Rptr. 579]), and that essentially in this case Flores acted much as a private person would have acted in making a citizen's arrest of a person who has committed or attempted to commit a public offense in the observer's presence. (Pen. Code, §§ 837, subd. 1, 839.)

Appellant in rebuttal asserts that the untested citizen observer exception of *Lewis* should not be applied in narcotics cases where the police have a duty to determine prior to the arrest either the reliability of the information given them by an untested informer or the credibility of that informer otherwise. He cites no authority for this position and we have been unable to discover any.

THERE WAS PROBABLE CAUSE FOR APPELLANT'S ARREST

At the outset of our discussion of this point we note that prior to arresting appellant the police had satisfied themselves as to Flores' ability to recognize marijuana and the basis of that ability and had confirmed by their first-hand observation the correctness of his detailed description of appellant. They also had found appellant where Flores had told them he would be and by their weapons search of appellant had verified another item in Flores' report to them—namely, the presence of a straight razor in appellant's right side pocket. In fact, the only part of Flores' story which they had not verified prior to his arrest was Flores' accusation of past and continuing criminal activity on appellant's part.

Appellant claims that under *People* v. *Gallegos,* 62 Cal.2d 176, 178-180 [41 Cal.Rptr. 590, 397 P.2d 174], and *People* v. *Reeves,* 61 Cal.2d 268, 274 [38 Cal.Rptr. 1, 391 P.2d 393], this was a fatal omission because the police may not legally make a warrantless arrest on the basis of information secured from an informer of unknown reliability without first obtaining "other independent evidence in corroboration of the incriminating facts supplied by their untested informer." *People* v. *Gallegos, supra,* at p. 179.)

In federal law there is no such requirement provided the informer is a reliable informer. (See *Draper* v. *United States,*

358 U.S. 307 [3 L.Ed.2d 327, 79 S.Ct. 329].) In *Draper* the United States Supreme Court took the position that since the quite detailed nonincriminating information had been corroborated prior to the arrest of the accused, the officer had reasonable grounds to believe that the unverified incriminating information was also true.[1] (*Idem,* at p. 313 [3 L.Ed.2d at p. 332].) Stated otherwise, as indicated in *Spinelli* v. *United States,* 393 U.S. 410, 417 [21 L.Ed.2d 637, 644, 89 S.Ct. 584], their verification of the nonincriminating aspects of his report prior to the arrest showed them the reliability of the report otherwise.

It should be noted that the apparent reliability of Flores was much greater than the apparent reliability of the informers in *Reeves* and *Gallegos.* In *Reeves* the informer was anonymous; in *Gallegos* he was a narcotics user in custody and still under the influence of a narcotic.[2] On the other hand, Flores was, as Owens was in *Lewis,* a citizen acting "openly in aid of law enforcement." (*People* v. *Lewis, supra,* 240 Cal.App.2d 546, 550.)

The judgment is affirmed.

Schweitzer, J., and Frampton, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 17, 1969.

---

[1]This is the converse inference to that incorporated in the opening sentence of a standard instruction, "A witness wilfully false in one material part of his testimony is to be distrusted in others." (See CALJIC, Rev. Ed., No. 52-A.)

[2]In *People* v. *Amos,* 181 Cal.App.2d 506, 507 [5 Cal.Rptr. 451], hear. den., the untested informer had himself just been arrested for possession of marijuana and upon police inquiry gave Amos as his source of supply. Likewise in *People* v. *Goodo,* 147 Cal.App.2d 7, 8 [304 P.2d 776], hear. den., the untested informer was one whom the police had stopped for interrogation. Similarly in *People* v. *Coleman,* 258 Cal.App.2d 560, 562 [65 Cal.Rptr. 732], the untested informer was one of those arrested with the defendant for another offense who immediately upon his arrest accused the defendant of having marijuana in her possession.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.