[Crim. No. 7807. First Dist., Div. Two. Nov. 20, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL DAVID CRAYCRAFT, Defendant and Appellant.

## Counsel

George P. Eshoo, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Eric Collins and James B. Cuneo, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**TAYLOR, J.**—On this appeal from a judgment of conviction of possession of marijuana for sale (Health & Saf. Code, § 11530.5) entered on a plea of guilty, the only contentions are that the evidence was obtained by an unlawful search and seizure, as there was no reasonable probable cause for arrest, and in the alternative, even if the arrest was lawful, the evidence was obtained as the result of an unreasonable search under *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034].

As there are no contentions concerning the sufficiency of the evidence, a brief summary of the pertinent facts will suffice. At the preliminary hearing, Mr. Simmons, an employee of Pacific Southwest Airlines at the San Diego Lindbergh Field Airport terminal, testified that about 10:45 a.m. on November 28, 1967, he detected the strong odor of liquor emanating from a large green military-type footlocker on which was stenciled the name "Walters." As his operations manual prohibited the handling of liquids that could damage other luggage or cargo, Simmons opened the unlocked footlocker and inside discovered a number of large brick-shaped objects wrapped in aluminum foil, covered by a sheet, on which he observed burnt grass material. Simmons had no prior experience with marijuana, but on the basis of certain educational materials he had read, strongly suspected that the wrapped objects were bricks of marijuana. Accordingly, Simmons

summoned two San Diego harbor police officers to the baggage area. These officers indicated that the matter was not in their jurisdiction, that they would notify the narcotics division, and instructed Simmons to allow the footlocker to proceed to its destination. The San Diego harbor police did not open the footlocker to verify Simmons' suspicion as the footlocker was scheduled for loading in four minutes and departure to San Francisco in 14 minutes.

Agent Ohlson of the state Bureau of Narcotics, was informed by his supervisor that a large green footlocker with the name "Lenore Walters" stenciled on it was on board PSA flight 111 from San Diego and contained marijuana. Ohlson and two other agents proceeded to Gate 34, where the flight was scheduled to arrive, and observed the codefendant Kohn there. When the flight arrived, defendant disembarked and began to converse with Kohn.

Ohlson then proceeded to the baggage area and waited until two PSA baggage handlers arrived with the large green footlocker and placed it on the floor. Ohlson approached the footlocker and from a distance of one to two feet, saw the name "Lenore Walters" stenciled on it and smelled the "strong, very strong odor" of marijuana emanating from it. Ohlson then moved away from the footlocker and continued to observe it until defendant and Kohn carried the footlocker out of the terminal. As they left the terminal, Ohlson and the other two agents arrested defendant and Kohn, opened the footlocker, and found 38 kilo-sized bricks of marijuana.

Ohlson testified that he had been employed by the Bureau of Narcotics for 14 years, was thoroughly familiar with the physical properties of marijuana and in the manner in which it is prepared for use. He insisted he had smelled marijuana emanating from the footlocker and denied that there had been any odor of liquor.

At the hearing conducted on the defense motion to suppress evidence pursuant to Penal Code section 1538.5,[1] the defense introduced the testimony of a toxicologist who conducted various tests on the footlocker and its contents. This defense expert concluded that it was physically impossible for Ohlson to have detected the odor of marijuana at the airport. The court resolved the conflict between the testimony of Simmons and Ohlson as to the odor emanating from the footlocker and the conflict between the defense expert and Ohlson in favor of the prosecution. Thus, the court concluded that since Ohlson did, in fact, detect the odor of

---

[1]This section provides for a pretrial motion to suppress on the ground, among others, of "violation of federal or state constitutional standards" (subd. (a) (2)). The superior court is required to determine the validity of the search and seizure de novo (*People* v. *Heard*, 266 Cal.App.2d 747 [72 Cal.Rptr. 374]).

marijuana emanating from the trunk, there was reasonable probable cause for the arrest. On the basis of this determination, the court found that the arrest was proper and the search a proper one incident thereto.

■ The first contention on appeal is that there was no reasonable probable cause for arrest because the facts known to Ohlson at the time of the arrest were insufficient to establish that defendant had committed a felony (Pen. Code, § 836).[2] Citing *People* v. *Robinson,* 269 Cal.App.2d 789 [75 Cal.Rptr. 395], defendant argues that Simmons was not a known reliable informant, and the information received from him as a private citizen was not sufficiently detailed or complete. On the contrary, Simmons was known by the officers as a regular employee of the airline and, thus, as a disinterested observer and a conscientious citizen on whom the officers could confidently rely (*People* v. *Barcenas,* 251 Cal.App.2d 405 [59 Cal.Rptr. 419]; *People* v. *Chavez,* 275 Cal.App.2d 54 [79 Cal.Rptr. 701]; *People* v. *Lewis,* 240 Cal.App.2d 546 [49 Cal.Rptr. 579]). Furthermore, the information supplied by Simmons to the San Diego harbor police and through them to Agent Ohlson did not stand alone as the sole information upon which the arrest was based. There was other independent evidence in corroboration.

Agent Ohlson had information that warranted further investigation, namely, that a green footlocker with the name Walters, arriving from San Diego, was suspected of containing bricks of marijuana. As Ohlson, an experienced narcotics officer, approached the footlocker, he detected the strong odor of marijuana. Here, as in *People* v. *Barcenas, supra,* whose facts are remarkably similar, the officer's expertise in detecting, through sense of smell, the presence of marijuana in the closed piece of luggage, was clearly established. Likewise here, as in *Barcenas,* the corroboration by the officer's sense of smell of the information supplied by Simmons to the harbor police and by them, in turn, to Ohlson's superior, established reasonable cause for the arrest of the person to whom the luggage belonged (*People* v. *Edwards,* 71 Cal.2d 1196 [80 Cal.Rptr. 633, 458 P.2d 713]; *People* v.

---

[2]Probable cause for an arrest without a warrant exists if the facts and circumstances known to the arresting officer would warrant a man of ordinary care and prudence to believe that an offense has been committed and that the accused is guilty thereof (*People* v. *Schader,* 62 Cal.2d 716 [44 Cal.Rptr. 193, 401 P.2d 665]). Each case must be decided on its own facts based on the situation presented or apparent to the officers at the time they were required to act (*People* v. *Schellin,* 227 Cal.App.2d 245 [38 Cal. Rptr. 593).

*Temple,* 276 Cal. App. 2d ·402 [80 Cal.Rptr. 885]; *People* v.. *Guidry,* 262 Cal.App.2d 495, 497-498 [68 Cal.Rptr. 794]).

Defendant further argues that *Barcenas* is no longer pertinent as *People* v. *Marshall,* 69 Cal.2d 51 [69 Cal.Rptr. 585, 442 P.2d 665], held that reasonable probable cause for an arrest cannot be based on the odor of marijuana alone. However, *Marshall* merely held that the odor of marijuana would not justify a search in the absence of the traditional requirements of either a warrant *or that such a search be conducted incident to a lawful arrest.* In *Marshall,* the search was not contemporaneous with a lawful arrest and it was necessary for the officers to pry into the hidden interior of a paper bag in a closet to uncover the contraband. In the instant case, the odor of marijuana detected by Ohlson sufficiently corroborated the information provided by Simmons and gave rise to reasonable probable cause and, thus, a lawful arrest. Defendant cannot contend on this appeal that the conflict in the evidence should have been resolved in his favor. Even assuming that Ohlson did not, in fact, smell marijuana, but honestly and reasonably believed that he did so, there would still be probable cause for arrest under the circumstances.

■ In the alternative, defendant argues for the first time in his closing brief that even if the arrest was a valid one made on probable cause, the search of the footlocker incident to the arrest was a search unreasonable in scope under *Chimel* v. *California, supra,* decided June 23, 1969. However, *Chimel* applies only to searches conducted after the date of its decision (*People* v. *Edwards, supra*), and thus has no bearing on this case.

The judgment is affirmed.

Shoemaker, P. J., and Agee, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 14, 1970.