[Crim. No. 7737. First Dist., Div. Four. Jan. 28, 1970.]

THE PEOPLE, Plaintiff and Appellant, v.
THOMAS G. ABBOTT, Defendant and Respondent.

## Counsel

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, Robert R. Granucci and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Appellant.

Edward T. Mancuso, Public Defender, and Charles G. Warner, Deputy Public Defender, for Defendant and Respondent.

## Opinion

**CHRISTIAN, J.**—The People appeal from an order setting aside an information which charged respondent Thomas G. Abbott with possession of of marijuana (Health & Saf. Code, § 11530). The question is whether the marijuana which was discovered in Abbott's possession was disclosed as the result of an unlawful assertion of police authority. The Attorney General's brief contains an accurate summary of the evidence heard at the preliminary hearing bearing on the question of lawfulness of seizure of the contraband:

"On February 14, 1968, Officer David C. Dugger of the San Francisco Police Department was on patrol duty in Golden Gate Park. While on patrol he was approached by a boy of approximately twelve to thirteen years. The boy asked Officer Dugger if he wanted to know about three people who had some 'dope.' Officer Dugger asked where these people were located. Officer Dugger also asked for a description of the people. The boy then proceeded to describe them. He said that there were three and that one of the persons was wearing a black jacket. Officer Dugger asked the boy to take him over to where the people were. The boy responded by saying, 'Well, I saw they had two bags of grass.' Dugger then asked the boy what he meant by 'bags of grass.' The boy replied, 'They have two bags of marijuana.' Officer Dugger then asked where they had the bags of marijuana and the boy replied, 'The one in the black leather coat has them in his coat pocket.'

"Officer Dugger then walked with the boy to some foliage from where the complainant pointed out three persons, one of which was wearing a black leather jacket. The three persons were just starting to leave the area. The boy said, 'There they are.' The person wearing the black leather jacket was subsequently identified as respondent Abbott.

"Officer Dugger approached and engaged Abbott in conversation, asking him about a prior unrelated incident in order to detain him until his partner arrived. Abbott appeared to be reluctant and be very nervous. When Dugger noticed that his partner was approaching, he asked Abbott what Abbott had in his jacket pocket. Abbott thereupon reached into his right

hand pocket and pulled out various miscellaneous items and said that he had nothing. At this point Dugger asked Abbott once more what Abbott had in his coat pocket. Abbott reached in and pulled out a plastic container containing green vegetable matter and said, 'Grass.' Officer Dugger immediately recognized the green leafy material as marijuana. It was stipulated for purposes of the preliminary hearing that a chemist would testify that the green vegetable material was in fact marijuana."

One additional circumstance must be noted: the boy who gave information to Officer Dugger departed; his name and whereabouts were unknown at the time of the preliminary hearing.

At both the preliminary hearing and the hearing on the motion to set aside the information, the principal question argued by counsel was whether the arresting officer's request to know what was in respondent's pockets constituted a search and, if so, whether respondent's compliance was a voluntary act or a submission to authority. At the preliminary hearing, the magistrate took the view that there was no submission to authority. This finding is implied by the fact that submission to authority was argued and the judge nevertheless held respondent to answer. In ruling on the motion under section 995, the judge of the superior court took a different view, declaring that "it was submission to authority and what he did was not free and voluntary, and on the grounds that the search of the—what occurred was unreasonable, the Court would suppress that evidence, it was an unlawful seizure. . . ."

 It is a question of fact whether consent to a search is voluntary; the lower court's determination will not be overturned if it is supported by substantial evidence. (*People* v. *Gorg* (1955) 45 Cal.2d 776 [291 P.2d 469]; *People* v. *Michael* (1955) 45 Cal.2d 751 [290 P.2d 852]; *People* v. *Mersino* (1965) 237 Cal.App.2d 265 [46 Cal.Rptr. 821]; *People* v. *Ruhman* (1964) 224 Cal.App.2d 284 [36 Cal.Rptr. 493].) Nevertheless, the order setting aside the information must be affirmed. The evidence is uncontradicted that at the time the arresting officer approached and began to interrogate respondent, the investigation was not a general inquiry into an unsolved crime; suspicion of possessing marijuana had focused specifically upon respondent. It is also clear that the question asked of respondent ("What have you got in your pocket?") was intended to elicit an incriminating statement. Moreover, it is uncontradicted that the arresting officer's purpose in engaging respondent in conversation was to prevent his leaving so that the officer could ask the incriminating questions and subsequently be able to apprehend him. It is also apparent from respondent's action, and the confession which the officer's question elicited, that respondent believed himself deprived of his freedom of action. Therefore, under the standard set forth in *People* v. *Arnold* (1967) 66 Cal.2d 438, 448 [58 Cal.Rptr. 115, 426

P.2d 515], the officer's question constituted an in-custody interrogation.[1]

It is also uncontradicted that respondent was not advised of his right until after his effective confession and production of the marijuana. (*People* v. *Dorado* (1965) 62 Cal.2d 338, 353-354 [42 Cal.Rptr. 169, 398 P.2d 361].) ■ Respondent's statement ("grass") elicited by the officer's question was inadmissible. The physical evidence was produced at the same time and for precisely the same reasons as the effective confession. Abbott's production of the marijuana was therefore an independent act of confession and was inadmissible for the same reasons.

It is contended by the People that the seizure of the marijuana was nevertheless justified as incident to a lawful arrest. The Attorney General argues that the arrest was lawful because made upon probable cause supplied by a "citizen-informer." Though the California Supreme Court has never held directly on the question, the Court of Appeal has on three occasions held that information from a citizen who is purported to have witnessed a crime may constitute probable cause for arrest (*People* v. *Guidry* (1968) 262 Cal. App.2d 495, 498 [68 Cal.Rptr. 794]; *People* v. *Lewis* (1966) 240 Cal.App. 2d 546, 549-551 [49 Cal.Rptr. 579]; *People* v. *Williams* (1959) 169 Cal. App.2d 400, 402 [337 P.2d 134]). However, in each of these cases the identity of the informer was known to the arresting officer. Moreover, the most recent of these cases specifically refers to the problem of information from a *"known* informer of unproved reliability." (*People* v. *Guidry, supra,* at p. 497; italics added.)

This suggests that where the informer is anonymous some kind of corroboration is necessary to constitute probable cause for arrest. Requiring knowledge of the identity of the informer arises out of the rationale expressed as a basis for the rule in these cases that "Such a citizen who observes criminal activity is more than a mere informer and tests of reliability that must be applied to experienced stool pigeons do not necessarily apply to every private citizen who aids the police." (*People* v. *Guidry, supra,* 262 Cal.App.2d 495, 498; see also *People* v. *Lewis, supra,* 240 Cal.App.2d 546, 550.) There is no way to determine whether an anonymous informer is a disinterested citizen, a stool pigeon, or even someone involved in the crime. ■ Thus, under the rationale expressed, knowledge of the informer's identity is crucial in determining the reliability of his information.

Three more Court of Appeal decisions contain dicta to the effect that, where the informer is not himself involved in criminal activity but is the innocent victim of a crime or a nonparticipating eyewitness who has come

---

[1]In *Arnold, supra,* the court held "that custody occurs if the suspect is physically deprived of his freedom of action in any significant way or is led to believe, as a reasonable person, that he is so deprived."

forward to assist in law enforcement, his information alone may constitute probable cause for arrest (*Pollock* v. *Superior Court* (1969) 272 Cal.App. 2d 548, 552 [77 Cal.Rptr. 565]; *People* v. *Gardner* (1967) 252 Cal.App. 2d 320, 324-325 [60 Cal.Rptr. 321]; *People* v. *Griffin* (1967) 250 Cal.App. 2d 545, 550-551 [58 Cal.Rptr. 707]). But in each of these cases, the informer was also a *victim* of the crime he related to the police. Thus, it appears that perhaps the rule expressed in these dicta is drawn too broadly if it is construed to include the anonymous non-victim eyewitness. This view is supported by a recent California Supreme Court case which draws a distinction between the anonymous informer and a citizen who purports to be a victim of the crime: "Although information provided by an untested informer or by an anonymous informer is not, without some showing justifying reliance, sufficient to justify an arrest [Citations], information from a citizen who purports to be the victim of a robbery or an assault has been held sufficient even though his reliability has not been previously tested. [Citations.] Such a person, who may expect to be called to testify after an arrest, and may be exposing himself to an action for malicious prosecution if he makes unfounded charges, is more than a mere informer who gives a tip to law enforcement officers that a person is engaged in a course of criminal conduct." (*People* v. *Hogan* (1969) 71 Cal.2d 888, 890-891 [80 Cal.Rptr. 28, 457 P.2d 868].) Again, the rationale for the citizen informer rule requires knowledge of the "citizen's" identity. And although the passage referring to the anonymous informer is dictim in *Hogan* it is nevertheless indicative of the Supreme Court's attitude toward anonymous informers.

█ Here it is uncontradicted in the record that the informer was a 12-year-old boy who disappeared shortly after imparting his information. The arresting officer had never seen the boy before nor has he seen him since. There was some purported corroboration in the fact that respondent did appear as the juvenile informer had described him. However, "[t]he required corroboration must relate to essential fact. It must be some independent fact indicating that there was then being committed a violation of law, or that a felony had been committed. Facts which are unrelated to a criminal activity on the part of defendant are insufficient to provide that corroboration of an untested declarant which is required." (*People* v. *Coleman* (1968) 258 Cal.App.2d 560, 564 [65 Cal.Rptr. 732], citing *People* v. *Reeves* (1964) 61 Cal.2d 268, 274 [38 Cal.Rptr. 1, 391 P.2d 393].) Thus the corroboration here pointed to by the prosecution was insufficient as a matter of law.

Therefore, until the time respondent actually admitted he possessed marijuana and produced the evidence in question, the arresting officer did not possess probable cause to make an arrest.

The order is affirmed.

Devine, P. J., and Rattigan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 25, 1970. McComb, J., and Mosk, J., were of the opinion that the petition should be granted.