[Crim. No. 8411. First Dist., Div. One. Nov. 9, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
DELVIN YOUNG, Defendant and Appellant.

## COUNSEL

Ann Zelhart Cook, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Karl S. Mayer, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ELKINGTON, J.**—Defendant Delvin Young was convicted by jury verdicts of three offenses relating to narcotics and restricted dangerous drugs. Three concurrent county jail sentences were ordered for a maximum of 60 days. He appeals from the judgment.

██ His first contention is that there was no probable cause for the issuance of a search warrant which turned up the evidence on which he was convicted. The contention has been considered and is found to be without merit.

The affidavit upon which the search warrant was based was that of a peace officer; it was dated May 7, 1969, the same day on which the search warrant was later issued. In it the officer related that on May 7, 1969, a 13-year-old girl, Peggy, had given him the following information. She stated that four days earlier, May 3d, she and her 17-year-old sister went to the premises for which the search warrant was later sought. Upon entering, the sister asked defendant Delvin Young, "Where is the grass?" Young then brought out a plastic bag containing what Peggy "believed to be marijuana." Young then rolled some of the substance into three "home-made cigarettes" which were thereupon smoked by the sister, Young, and another man, Frank Spencer. The girl described "the odor of the substance that was being smoked and its general physical characteristics" to the officer. Each of the other three persons told Peggy "that it was 'grass' " they were smoking. All concerned then went out for an automobile ride on which more of the same type of cigarettes were made up and smoked and passed around the car. Frank Spencer "had a baggie of marijuana on his lap" from which such a cigarette was rolled. The officer's affidavit gave this additional information. Peggy's description to him of the substance she had seen and smelled made it "appear that it was marijuana." The county sheriff's department for a couple of weeks had received "complaints from the neighborhood . . . to the following effect: Individuals that can be described as Hippies have been coming and going from that [described] house day and night." One such complaint stated that this traffic was "all hours of the day and night" and that it included many young girls. Five men, including Frank Spencer,

known to frequent the premises were also known to be "narcotic users and/or dealers." Frank Spencer had three times been arrested for narcotic violations. Several narcotics users had previously told the officer "that their source of supply was Rocky Young" (the defendant here).

We find the recitals of the officer's affidavit to be amply supportive of a reasonable belief that narcotics would probably be found in the described premises. We believe that Peggy's status was that of a "citizen informer" whose testimony need not be corroborated. (See *People* v. *Chavez,* 275 Cal.App.2d 54, 55-58 [79 Cal.Rptr. 701]; *People* v. *Waller,* 260 Cal.App. 2d 131, 137 [67 Cal.Rptr. 8] [cert. den. 393 U.S. 1039 (21 L.Ed.2d 586, 89 S.Ct. 663)]; *People* v. *Coleman,* 258 Cal.App.2d 560, 564 [65 Cal.Rptr. 732].) Assuming, *arguendo,* that corroboration was required (see *People* v. *Scoma,* 71 Cal.2d 332, 338-339 [78 Cal.Rptr. 491, 455 P.2d 419]), the additional information known to the police adequately served that purpose.

■ The contention that "a nighttime search was unauthorized by the warrant" is also without merit. Young's argument here is that the magistrate did not "insert a direction in the warrant" to authorize a night search as provided by Penal Code section 1533.

The subject search warrant, among other thing, commanded the officers to whom it was directed "to make immediate search in the daytime (*at any time of the day or night, good cause being shown therefor*), etc." The parenthesized words were underlined by the magistrate who then initialed and dated the adjacent margin. The intent of the magistrate to allow a nighttime search was indicated, and the pertinent Penal Code provision was substantially complied with.

■ Nor is merit seen in Young's final contention of error in allowing a laboratory technician, whose duties had to do with the testing and identification of dangerous drugs, to answer the question, "Now, what is the effect of this particular type of drug?" Young objected to the question "on the grounds he is not qualified as a doctor, he's only qualified as a chemist or physiologist," and as not being relevant to the issues.

The first ground of objection is obviously unfounded. Few, if any, academic disciplines would be better qualified to discuss the effect of dangerous drugs on the human body, than that of physiology. The question was relevant to the issues before the jury; its answer would reasonably have some bearing on whether the subject drugs were "restricted dangerous drugs" the possession of which is proscribed by statute. And since the search uncovered about a "cupfull" of the substance which the jury could reasonably conclude was used by Young and his "furnishees," the subject matter of the criticized

question reasonably related to Young's knowledge of the substance's character as a restricted dangerous drug—a necessary element of one of the charges.

No contention was made at the trial, and none is made here, that the laboratory technician's answer was not reasonably responsive to the question.

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.