[Crim. No. 6594. Third Dist. Dec. 12, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL JOSEPH ZIMNICKI, Defendant and Appellant.

**578**

## COUNSEL

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Roger E. Venturi, Charles P. Just and Willard F. Jones, Deputy Attorneys General, for Plaintiff and Respondent.

Ahrbeck & Cannan and Jess D. Cannan for Defendant and Appellant.

## OPINION

**MORONY, J.***—Defendant appeals following entry of judgment of conviction on one count of violation of Health and Safety Code section 11530 (possession of marijuana). The trial court made the finding of guilt after submission of the cause on the preliminary hearing transcript. The defendant had earlier made motions under Penal Code sections 995 and 1538.5, both of which were denied by the trial court.

---

*Assigned by the Chairman of the Judicial Council.

Defendant raises the following contentions on his appeal, all of which follow from his basic premise that the stopping of his vehicle and the seizure of marijuana therefrom were improper in that: (1) the arresting officer did not have probable cause to stop and search the vehicle; (2) the information furnished by the two hitchhikers was not sufficiently factual to establish reliability; and (3) the prosecution did not sufficiently prove its case at the preliminary hearing. (*People* v. *Harvey* (1958) 156 Cal.App.2d 516 [319 P.2d 689].)

## FACTS

Edward Frenick, dispatcher for the California Highway Patrol in the Yreka area, was on duty January 4, 1972, at 1 a.m. He received a call by radio from the Oregon State Police in Medford at 1:32 a.m. The call was to the effect that a hitchhiker passenger in one of three E-Z Haul trucks traveling together reported that the driver was smoking marijuana. The call further related that the particular vehicle involved had Alabama license plates, and that it had left Medford at about 10 minutes after midnight. Frenick then broadcast this message to his units. He put out a second call at 1:59 a.m.

Stephen Erickson, California Highway Patrol officer, testified that the second call was received by his unit as it was leaving a restaurant. He saw two trucks apparently traveling together, and noticed that the rear one had Alabama license plates. Erickson stopped the truck near the City of Mount Shasta, three miles south of his location when he received the call.

Erickson approached the truck with the Alabama plates and stated to the driver (defendant), "Good evening, sir. The reason I stopped you is I have a report from hitchhikers that you have Marijuana in your vehicle. Will you please leave the vehicle?" Defendant stepped from the vehicle and was placed in the custody of another officer (at the back of the vehicle) who was told to watch him.[1] Erickson then testified, "While I was looking around the vehicle, I observed this glove beneath the seat. I was standing on the right side of the vehicle. The door was open. I looked underneath the seat. The glove was laying underneath the seat; the open part was facing me, and I could see the plastic bag. I could not determine what was in the plastic bag by my vision at that time." Apparently, the plastic bag was partially out of the glove. Erickson said that he knew it was marijuana.

Erickson subsequently confronted defendant with the marijuana, and

---

[1]While circumstances may support an initial stop and questioning, a question arises whether the removal of the driver and his temporary detention (as described in this record) was valid. (See *Thomas* v. *Superior Court* (1972) 22 Cal.App.3d 972, especially fn. 7, p. 980 [99 Cal.Rptr. 647].)

advised him of his rights. Erickson later obtained the names and addresses of the hitchhikers from the dispatcher for his report.

### *Did the Arresting Officer Have Probable Cause to Stop and Search the Vehicle*

■ Initially, it is observed that the prosecution has the burden of justifying the instant search of the vehicle which resulted in discovery of the marijuana because the search was made without benefit of a warrant. (*Horack* v. *Superior Court* (1970) 3 Cal.3d 720, 725 [91 Cal.Rptr. 569, 478 P.2d 1]; *Eiseman* v. *Superior Court* (1971) 21 Cal.App.3d 342, 349 [98 Cal.Rptr. 342].)

### I. *Citizen-Informer — Doctrine*

The prosecution herein relies upon the citizen-informer doctrine to supply the probable cause necessary to justify the stop, the search and the arrest.

The courts have long distinguished the citizen-informer from other informants. The court in *People* v. *Guidry* (1968) 262 Cal.App.2d 495, 497-498 [68 Cal.Rptr. 794], expressed this distinction as follows: "There is probable cause for an officer to arrest if the information that was acted upon would cause a reasonably prudent man to believe and conscientiously entertain an honest and strong suspicion that the accused is guilty. [Citations.]

". . . Information from a known informer of unproved reliability is relevant on the issue of probable cause but it is ordinarily not enough. [Citation.] However, the situation in which a private citizen informs the police of criminal activities is different from information given by a mere informer. This court recently held . . . that police officers may act on the observations of private citizens who report crimes committed in their presence. Such a citizen who observes criminal activity is more than a mere informer and tests of reliability that must be applied to experienced stool pigeons do not necessarily apply to every private citizen who aids the police. [Citation.]"

### II. *Citizen-Informer — Credibility*

■ An analysis of several recent cases involving the "citizen-informer" rule compels the conclusion that such rule, in its application, does not necessarily dispense with all requirements of credibility.

Two recent Court of Appeal cases have discussed the citizen-informer, and in both instances have held that the doctrine was not applicable. In

*People* v. *Abbott* (1970) 3 Cal.App.3d 966 [84 Cal.Rptr. 40], a 12- or 13-year-old boy approached a San Francisco police officer who was on patrol duty in Golden Gate Park. The boy told the officer that three persons in the park had two baggies of marijuana. The officer approached the three, detained them, asked questions calculated to elicit admissions, and induced the defendant to remove the contraband from his jacket pocket. The young boy who had supplied the information to the police departed the scene without giving his name or address. The Court of Appeal held that, since the identity of the boy was unknown to the police, the doctrine of the citizen-informer was likewise unavailable. (*Id.* at p. 970.)

In *McClellan* v. *Superior Court* (1971) 18 Cal.App.3d 311 [95 Cal.Rptr. 590], the court analyzed a situation comparable to that herein. In *McClellan,* the "citizen-informer" was a gasoline station attendant on duty when a vehicle, containing three passengers, entered the station and one of the passengers offered to sell the attendant a "lid." The attendant declined the offer, and the vehicle left the station. The attendant then called the police to report the incident, and gave a description of the car and a license number. The car was thereafter stopped, the occupants were subjected to a pat-down search, the car was searched, and a large amount of narcotics was found. The court, in declining to apply the citizen-informer rule in order to provide a foundation for the search, found that the record presented by the prosecution was not sufficient to so clothe the station attendant. "It is true that this court, now, knows that the original informer was, in fact, the attendant at a local gasoline station and that he was and is a person of good repute. But none of the officers knew, *at the time of the arrest,* anything to give credibility to the phone call. The officer receiving it did not know the attendant, had never seen him, and did not recognize his voice. The officers who received, either directly or second or third hand, the crime report, knew even less. No one attempted by calling back or by visiting the station, to verify even so much as that the voice on the phone actually belonged to the attendant; no one knew whether or not he was a credible person." (*Id.* at p. 314.) (Original italics.) The court thereupon held, "We regard the conduct [stop, pat-search and car-search] as clearly illegal. The tip from a totally untested and unidentified informant gave, at best, merely a right to stop for interrogation." (*Ibid.*)

Although the opinion requires a close reading, it is apparent that in *McClellan,* despite the fact that the gas station attendant identified himself to the police, the appellate court viewed him as an untested informant. The citizen-informer status was not permitted to evade the reasonable protection of credibility.

The instant case presents even stronger justification for application of a

qualified or limited "citizen-informer" rule. In *McClellan,* as in the instant case, the informant saw the felony in the act of commission, and in both cases the informant notified the police of the offense. At this point in the comparison the facts diverge: In *McClellan* one could reasonably assume the persons occupying the vehicle had a quantity of narcotics since they were being offered for sale; in the case at bench, all that the police could surmise is that the driver of the truck had smoked marijuana. More significantly, in *McClellan,* at the time of the hearing on the motion to suppress, the court could at least conclude that the service station attendant was a person of good repute; in the instant case, even after conviction, we have no information whatsoever as to the credibility of the two hitchhikers.

A recent Supreme Court case lends credence to an approach to the "citizen-informer" rule which does not dispense with all requirements of credibility. In *People* v. *Hogan* (1969) 71 Cal.2d 888 [80 Cal.Rptr. 28, 457 P.2d 868], the victim of a robbery reported it to the police. The defendant was thereafter arrested. The Supreme Court after reciting the rule that information from an untested informant is not sufficient to justify an arrest in the absence of corroboration, there stated at pages 890-891: "[I]nformation from a citizen who purports to be the *victim* of a robbery or an assault has been held sufficient even though his reliability has not been previously tested. [Citations.] Such a person, who may expect to be called to testify after an arrest, and may be exposing himself to an action for malicious prosecution if he makes unfounded charges, is more than a mere informer who gives a tip to law enforcement officers that a person is engaged in a course of criminal conduct." (Italics added.) It is concluded that there is a distinction between citizen-informer cases wherein the informer is a victim, and when he is an onlooker. (See *People* v. *Abbott, supra,* 3 Cal.App.3d pp. 970-971.)

### III. *Citizen-Informer — Corroboration*

An analysis of three cases wherein the courts have applied the citizen-informer rule compels the conclusion that some corroboration of the accusation that a crime has taken place is necessary. In *People* v. *Guidry, supra,* 262 Cal.App.2d 495, the informant was defendants' landlady, who discovered narcotics paraphernalia in the room occupied by them. The police called the landlady on a second occasion to confirm the information, and she further informed them that the men had tracks on their arms, and that their actions were unusual. The police knew that the codefendant was a user with five previous arrests. The court held that the above combination of circumstances was sufficient, if not to justify an arrest, to justify an investigation. *(Id.* at p. 498.)

In *People* v. *Williams* (1959) 169 Cal.App.2d 400 [337 P.2d 134], a store clerk informed the police that he believed defendant had taken some merchandise from the store and shoved it under her skirt. Corroboration is disclosed by the following excerpt from the opinion (at p. 402): "The testimony contains no direct description of how distorted the clothing appeared, but one would be naive indeed not to understand what she must have looked like with three men's suits (coats, pants and hangers in each case) suspended from the front of her girdle. The officers were not required to blind themselves to what was in plain sight . . . ."

In *People* v. *Lewis* (1966) 240 Cal.App.2d 546 [49 Cal.Rptr. 579], the "citizen-informer" was at home watching television when he heard the sound of breaking glass and a burglar alarm. He looked across the street and saw a person come out of a cleaning establishment carrying clothes. The informant then called the police. On arrival, the informant directed the attention of the police to the defendant, walking along the street, as the person who had entered the cleaners. The police knew by their own observation that someone had broken into the cleaners. This provided corroboration for the report of the informant. (See *People* v. *Chavez* (1969) 275 Cal.App.2d 54 [79 Cal.Rptr. 701], where, although there were no corroborative facts as to *guilt,* the citizen-informer discussed with the police at length his knowledge of the nature of the contraband, he agreed to be a witness, he accompanied the officers to the place where he stated the defendant would be, and the defendant carried a weapon exactly as described.)

## Conclusion

The cases thus require some measure either of credibility or of corroboration. It is readily apparent in the instant case that absolutely no corroboration is present in the record as to defendant's alleged criminal act. Furthermore, there is a glaring absence of any facts indicating credibility.

The officer testified that as he approached the vehicle there was nothing suspicious about it; and that even after he had stopped the defendant, there was neither anything suspicious about him nor did he do anything to arouse any suspicion. He further testified that the defendant was "not under the influence." The officer had not observed any traffic or vehicle violations by the defendant. Upon stopping the vehicle, the officer did not smell the odor of marijuana, he did not see any "furtive" movements by the defendant, he did not see any recognizable contraband in plain sight, and when he did find, by using a flashlight, a plastic bag in a glove lying underneath the right hand seat he was unable to "determine what was in the plastic bag by my vision at that time." The officer also testified that he would not have arrested

defendant if he had not found the contraband resulting from this search. The foregoing recitals are merely illustrative of the total lack of any corroboration in this case.

An equal absence of any facts relating to the credibility of the citizen-informers is evidenced by the examination of Officer Erickson, wherein he denied receiving any information as to the identity or veracity of the hitchhikers.

There was given no physical description of the driver—whether the driver was male or female—or anything as to race, height, weight, age, complexion, eyeglasses, or clothing. There was no information supplied as to how long the hitchhikers had ridden with the truck driver, how much marijuana smoking occurred, when and where it occurred, whether the hitchhikers had participated in the smoking or how they knew it was marijuana being smoked or who furnished it. Furthermore, there was no explanation of who the hitchhikers were other than names and a Nevada address—no information was supplied concerning their ages, occupations, where they were going to or coming from, or why they left the southbound truck in Oregon if in fact they were headed back to Nevada. It is interesting to note that the "baggie" was found, not on the driver's side, but lying underneath the seat on the right or *passenger side* of the vehicle. What were the motives of the hitchhikers in contacting the police after midnight to make such a report? Were they just being good, responsible citizens or was there some questionable reason why they no longer were riding as passengers with the driver? Would a reasonable person have concluded that the sparse information supplied under these conditions was reliable? The foregoing recitals are merely illustrative of the total lack of facts pertaining to credibility of the informers.

To permit the search and arrest of a defendant on such a showing as is here present is to attribute to the words "citizen-informer" priority over reasonable requirements of credibility or corroboration. Although the report received herein was sufficient to justify a temporary detention antecedent to an investigation (*People* v. *Mickelson* (1963) 59 Cal.2d 448, 450-451 [30 Cal.Rptr. 18, 380 P.2d 658]), a fair reading of the cases compels the conclusion that to predicate probable cause thereon was error.

Judgment of conviction is reversed.

Richardson, P. J., and Janes, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 8, 1973.